## THE VIKING.

## THE ROBERT DONALDSON.

(District Court, E. D. Virginia. November 27, 1912.)

1. COLLISION (§ 95\*)—ANCHORED STEAMSHIP AND TOW—FAULT OF TUG AND TOW.

A collision in Hampton Roads in the daytime between an anchored steamship and a barge in tow *held* to have been due to the fault of the tug and tow—the former being in fault for not passing the steamship on the other side, as was customary, her action involving risk of collision because of the length of the towing hawser and set of the tide; and the latter for not being' properly manned and in consequence failing to clear the steamship, as she might have done by proper navigation.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.\*]

2. COLLISION (§ 71\*)—SHIP AT ANCHOR.

In a collision between a barge, in tow or a tug, and a ship at anchor, barge *held* in fault, as well as tug, because of failure to have efficient lookout, in addition to master at wheel, on the barge.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.\*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

In Admiralty. Suit for collision by John Brown, master of the steamship Bangor, against the steam tug Viking and the barge Robert Donaldson. On final hearing. Decree against both the tug and barge.

Hughes, Little & Seawell, of Norfolk, Va., for libelant.

W. H. White, Jr., of Norfolk, Va., for the Viking.

John W. Oast, Jr., of Norfolk, Va., and W. M. Harris, of Philadelphia, Pa., for the Robert Donaldson.

WADDILL, District Judge. This case grows out of a collision that occurred in Hampton Roads, on the 20th day of February, 1912, between the British steamship Bangor, and the barge Robert Donaldson, in tow of the steam tug Viking. The libel is filed by the Bangor's master against the tug and barge, and the master of the barge has also filed an intervening petition and libel against the tug.

The Bangor, light, an ocean-going steamer of 2,201 net tons burden, 330.6 feet in length, 43.2 feet in breadth, and 21.6 feet draft, was and had been anchored at the quarantine station on the western side of the main channel, about three-quarters of a mile to the southward and westward of the hospital ship Jamestown, stationed near Old Point Comfort, Va. On the day in question the Viking, a combined freight and tug boat, of about 145 tons gross, 110.1 feet in length, 21.5 feet in breadth, and 7.3 feet draft, was towing the Robert Donaldson, a barge of 185 feet in length, 23.10 feet in breadth, and 13.6 feet draft, 389 gross tons, and 378 net tonnage, about one-half capacity loaded, bound to Philadelphia by the bay and inland route, intending to stop in the Poquossin river, with a view of completing its cargo. The day was clear, and weather fair, with little or no wind; a strong ebb tide running.

The tug, in going out of Hampton Roads, attempted to pass around the bow of the Bangor, the ship at the time heading up the channel and to the southward and westward, and cleared the same variously estimated at from 60 to 300 feet, and the barge collided with the Bangor; the starboard bow of the barge coming into collision with the port bow of the ship, causing serious injury to both vessels. The barge, at the time, was being towed on a hawser claimed by the libelant to be 500 feet long, and admitted by respondents to be 360 feet, and the tug was making about 4½ miles an hour.

The assignments of fault by the libelant against the tug and barge are many in number, and on the part of the latter vessels, the assignments are in large measure of fault one against the other; and in turn they assign against the Bangor that she was anchored in an improper place, was without a proper lookout, and at the time of the collision should have played out more chain, with a view of preventing the accident. The court will not attempt to enter into a general discussion of the various assignments of fault, but merely pass upon those material to be determined, and bearing directly upon the collision, considering them against the ship, the tug, and the barge, in the order mentioned.

First. The faults alleged against the Bangor are entirely without merit. She was anchored in a recognized anchorage ground in Hampton Roads, with ample room on both sides of her for the tug and tow to have passed, and with a great space to the eastward and southward

side of her, which was the regular fairway over which shipping generally passed at the time, and during the 17 days she had been at anchor; and there were no special conditions making it impractical for the tug and tow to have taken the course adopted by other vessels at this time, nor for their not passing in safety on the contrary course, on the opposite side of the vessel, if it saw proper to adopt the same. It is true the tug insists that it took the course it did because of the existence of other shipping in the fairway. This, however, is not supported by the testimony; and in no event does it account for the failure to properly navigate on the western side of the Bangor, where there was ample room as before stated.

The criticism respecting the lack of a lookout by the Bangor is equally without merit, certainly so far as this collision is concerned, as there is no pretense but that the ship was seen, and its position known, several miles away, and there was nothing that a lookout could have done to avoid the collision. The suggestion that the ship was in fault for failing to play out more chain before the collision, is also without merit; and in any event, if in default in this respect, it would have been error in extremis, for which she would not be liable.

[1] Secondly. The claim of the Viking that the collision was brought about by the barge's taking a sudden sheer to starboard as the tug passed the bow of the Bangor, thereby bringing about the accident, is not supported by the testimony, and in any event it would not serve to relieve the tug, since it was charged with the obligation, not only to avoid the collision, but the risk of collision, either by itself or the tow. The faults on the part of the tug are clear and palpable, arising as well from attempting to pass unnecessarily to the westward of the Bangor, instead of the southward and eastward, as other shipping did, as from its failure to so direct its movements as to prevent either itself or its tow from fouling the anchor chain of the ship, or coming in too close proximity thereto. Under the circumstances, with ample room on either side, and no conditions arising from the weather or otherwise, it clearly should not have attempted to graze by her, and it should have taken into account any possible deviations in course that its tow might suddenly make, including the possibility of its failure to follow closely in the wake of the tug, and especially was it charged with knowledge of the fact that the tide at the time was runing strongly ebb, which would tend to drive a large barge, of the character of the Donaldson, into the anchored ship.

[2] Thirdly. Considering the responsibility of the barge for the collision, we are confronted with a more difficult question, as she was in tow of a tug that in large measure controlled her movements. The ship's contentions are that the barge was, among other things, at fault in not being properly manned, in permitting the tug to bring her into dangerous proximity with a vessel at anchor, in failing to follow the course of the tug, in not letting go her towline in time to avoid the collision, and in being towed by a tug incapable of properly controlling the barge's movements.

While all of the above enumerated faults against the barge may not be said to be fully established by the testimony, the conclusion of

the court is that it is quite manifest that the barge was not sufficiently manned for the voyage in question, and that her failure in this respect contributed directly to the cause of the disaster. The master of the barge, in his efforts to control the wheel and at the same time perform the duty of lookout and deckhand, taking into account the barge's length, utterly failed to perform either service in the manner that good seamanship required, and that was necessary to be rendered, looking to the avoidance of the collision. The imminent danger of the collision was apparent to those on the barge a sufficiently long time in advance of the happening of the event to have made the services of both a lookout in the bow of the barge and a wheelsman at the helm essential. Had the barge promptly cast its hawser off, upon the tug's course being apparent, and put its wheel hard aport, the collision would almost certainly have been avoided, and in any event it would have so lightened the blow thereof as to make the same of small consequence. The barge's master did perhaps what he believed to be best in the emergency in which he was placed; but he was largely powerless to do anything by himself, with the strong ebb tide then prevailing. He put his wheel hard astarboard, placing it in a becket, and rushed to the forward part of his barge, and threw the hawser off, but too late to accomplish anything—in fact, he admits that the hawser was thrown off just as the crash came. Moreover, the presence of a proper lookout would in every probability have earlier warned the master at the wheel of the dangers likely to ensue from the tug's course.

The barge's master says that he supposed the tug would pass on the port side of the ship, until within something less than 300 feet away, when he observed his change of course. This statement, however, is not supported by the testimony, as the barge was on a hawser of 360 feet, and probably longer, and the tug's purpose to cross the bow of the anchored ship, and the danger of such an experiment to the tow, must have been evident several minutes before the collision. To make successful such a maneuver on the part of the tug required the constant attention of those on the barge to avoid the latter's colliding with the ship, and this duty could not have been performed by only one person upon a barge of this size.

The barge, at the time of the collision, was under charter by the owner of the Viking, and there is considerable evidence to support the charge on the part of the ship that the Viking was incapable of handling properly the tow; but that question need not be determined positively, in arriving at a conclusion in this case, as it is evident that the barge was in fault in the two respects mentioned—that is to say, in not being properly manned, and as a consequence in failing to fully perform its duties at the time of the collision.

From what has been said, it follows that the Bangor was without fault, and that the collision was caused by the joint negligence of the tug and the barge, for which they are each liable, and a decree will be entered so ascertaining, and at the same time dismissing the intervening petition and libel filed on behalf of the barge.